Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3534 | **DATE** | 3/31/2004 |
| **CASE TITLE** | Allan Hill vs. Chicago Board of Education | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]    Enter Amended Memorandum Opinion and Order *nunc pro tunc* 3/29/04. Memorandum is amended only on the signature page to reflect the date to be March 29, 2004.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | 2 | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | MAR 2004 | |
| | Notified counsel by telephone. | | | date docketed | 2^ |
| | Docketing to mail notices. | | | docketing deputy initials | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | 3/31/2004 | |
| | | | | date mailed notice | |
| ETV | courtroom deputy's initials | | | ETV | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

| | |
|---|---|
| ALLAN HILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 02 C 3534 |
| ) | |
| CHICAGO BOARD OF EDUCATION, ) | Judge Rebecca R. Pallmeyer |
| ) | |
| Defendant. ) | |

## AMENDED MEMORANDUM OPINION AND ORDER

Allan Hill ("Hill"), a teacher at Edgebrook Elementary School ("Edgebrook"), filed this action in May 2002 against his employer, the Board of Education of the City of Chicago (the "Board"),[1] alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Hill learned from several female that a group of male students in his social studies class had made lewd remarks and gestures toward and hit and spit on the female students. Subsequently, after observing two male students in class laughing at a student who spoke slowly, Hill compared this group of male students to "gangbangers" and reported the incidents to Edgebrook's principal. A few days later, while driving home from school, Plaintiff yelled at several of these male students after he observed them walking in the street. After investigating Hill's actions, the Board adopted a resolution stating that he had engaged in "unsatisfactory conduct" and warning that the Board would bring dismissal charges if he again engaged in such conduct. Hill claims the Board's investigation and resolution were in retaliation for his complaints to the principal of Edgebrook regarding the male students' behavior. The Board now moves for summary judgment. For the reasons stated below, the Board's motion is granted.

---

[1] Hill also named the City of Chicago in its complaint in this action, but on June 4, 2002, this court dismissed the City of Chicago as a party defendant pursuant to Hill's notice of dismissal, under Rule 41(a)(1)(i).

27

# FACTUAL BACKGROUND

## I.   Plaintiff's Employment History

Plaintiff Hill has been a teacher in the Chicago Public Schools since September 1961. (Hill Dep., Ex. C to Def.'s 56.1,[2] at 9.) From 1972 to the present, Plaintiff has taught social studies, literature, and gym to sixth, seventh, and eighth graders at Edgebrook. (Def.'s 56.1 ¶¶15-16.)

## II.   Disciplinary Procedures

On July 15, 1991, the Board adopted a Uniform Discipline Code (the "Code"), which established various disciplinary actions for student misconduct.[3] The Code provides that "[i]f a student commits a serious act of misconduct, a Misconduct Report is prepared and the parent/guardian/student is contacted notifying [him or her] of the misconduct."[4] During the 2000-2001 school year, Plaintiff wrote approximately 26 Misconduct Reports. (Def.'s 56.1 ¶ 23.) Plaintiff believes that a teacher may only write a Misconduct Report for an incident that occurs on school property.[5] (*Id.* ¶ 26; Hill Dep., at 27.) For the past five years or more, however, Plaintiff has advised students that they may also inform him of student misconduct that occurs off school property. (Def.'s 56.1 ¶ 24.) If Plaintiff receives more than one report of such misconduct, he asks the reporting student to describe the misconduct on an index card. (Hill Dep., at 22-23.) If the incident appears to be sufficiently serious, Plaintiff instructs the student to give the card to Dr. Dianne Maciejewski ("Maciejewski"), who has been principal of Edgebrook and Plaintiff's immediate

---

[2]   Defendant's Local Rule 56.1(a)(3) Statement of Undisputed Material Facts.

[3]   *See* http://policy.cps.k12.il.us/documents/705.2.pdf; http://policy.cps.k12.il.us/uniform.asp. No sections of the Code are in the record.

[4]   *See* http://policy.cps.k12.il.us/documents/9.pdf.

[5]   Although the Code provides that a student may be "subject to discipline for serious acts of misconduct which occur either off campus or during non-school hours when the misconduct disrupts or may disrupt the orderly educational process in the Chicago Public Schools," it does not indicate whether a teacher may submit a Misconduct Report for incidents that occur off school grounds. *See* http://policy.cps.k12.il.us/documents/0.pdf.

2

supervisor for 17 years.[6] Plaintiff then speaks with the alleged perpetrator of the misconduct. (*Id.* at 23.)

## III. Alleged Harassment of Female Students

In September 2000, a parent and several unnamed students told Plaintiff that six male students in his seventh grade social studies class–P.W., S.P., T.O., A.F., K.R., and M.M.–called themselves "The Posse." (Hill Dep., at 40, 60-61, 63; Ex. 6 to Maciejewski Dep., Ex. D to Def.'s 56.1; Def.'s 56.1 ¶ 81; Pl.'s Resp. 56.1[7] ¶ 82; Pl.'s 56.1[8] ¶ 5.) Defendant points out that "Plaintiff has no first hand knowledge that a group of six male students in his class called themselves 'The Posse,'" but does not challenge Plaintiff's assertion that this report was made. (Def.'s 56.1 ¶ 82; Def.'s Resp. 56.1[9] ¶ 5.) According to Plaintiff, "at least once a week, and sometimes more often," during the period September through November 2000, at least five seventh and eighth grade female students reported to Plaintiff that alleged members of "The Posse" were engaging in "[i]ncidents of harassment." (Pl.'s 56.1 ¶¶ 5-6; Hill Aff., Ex. B to Pl.'s Resp. 56.1 ¶¶ 11,[10] 16; Hill Dep., at 112.) Again, Defendant notes that "Plaintiff never saw or heard the allege[d] perpetrators sexually harass the complaining female students." (Def.'s 56.1 ¶ 32; Def.'s Resp. 56.1 ¶ 5.) Plaintiff described three such incidents. First, near the beginning of the 2000-2001 school year,

---

[6] Plaintiff did not indicate why he had the students give the cards to Maciejewski.

[7] Plaintiff's Response to Defendant's Local Rule 56.1(a)(3) Statement of Undisputed Facts.

[8] Plaintiff's Rule 56.1(b)(3)(B) Statement of Additional Facts.

[9] Defendant's Response to Plaintiff's Local Rule 56.1(b)(3)(B) Statement of Additional Facts.

[10] Defendant urges that ¶ 11 of Plaintiff's affidavit should be stricken because it "uses the general term 'harassment'," while "[t]he survival of [P]laintiff's Title VII retaliation lawsuit . . . is specifically based on the allegation that he complained of 'sexual harassment.'" (Defendant's Reply Brief in Further Support of Its Motion for Summary Judgment, at 3-4.) As the court finds that Title VII does not prohibit peer student harassment–sexual or otherwise–the court sees no harm in citing Plaintiff's use of the term "harassment" in this factual background section.

3

some of Plaintiff's female students told him that several of these male students were "harassing" them and "making obscene and suggestive actions and sexual propositions." (Hill Aff. ¶ 5; Pl.'s 56.1 ¶ 1.)

Second, during the second or third week of school, a group of female seventh and eighth grade students told Plaintiff that, on the playground, several of these male students "were swearing at them[ a]nd in the most vile sexual ways possible suggesting different things that they wanted the girls to do to them, calling them bitches . . . ." (Hill Dep., at 100-01.) On September 21 or 22, Plaintiff verbally described this incident to Maciejewski and told her, "This has got to stop. They don't have the right to do that to those girls." (Hill Dep., at 100-01; Def.'s 56.1 ¶ 31.) Plaintiff testified that Maciejewski responded that she would look into the matter. (Hill Dep., at 102.) Third, at some point prior to October 18, three female students told Plaintiff that P.W. and M.M. chased, caught, hit, and spit on them while they were walking home from school. (Def.'s 56.1 ¶ 43; Pl.'s 56.1 ¶ 11; Hill Dep., at 60-62.)

After being told about each of these incidents, Plaintiff "sent the complaining student to [Maciejewski] with the incident reported on a card." (Pl.'s 56.1 ¶¶ 6, 8; Hill Aff. ¶ 12; Hill Dep., at 112.) The record does not indicate whether Maciejewski ever in fact spoke with any of these female students,[11] received any cards from them,[12] or took any follow-up actions. It is undisputed that Plaintiff never complained to anyone at the Board that male students were harassing female

---

[11] Plaintiff claims that a female student who complained to Plaintiff about harassing behavior in December told Plaintiff that when she told Maciejewski about the incident, Maciejewski "just laughed about it." (Hill Dep., at 113.) This alleged incident is not relevant to Plaintiff's retaliation claim, as it occurred after Defendant had completed its investigation of Plaintiff on November 30.

[12] Defendant claims that Plaintiff "admitted, and the record is uncontroverted, that Dr. Maciejewski did not receive a note card from a female student alleging that she had been subjected to verbal sexual harassment from a male student." (Def.'s Resp. 56.1 ¶ 6.) To support this contention, Defendant cites Plaintiff's Response 56.1 ¶ 35, in which Plaintiff merely admits Defendant's statement that Plaintiff has no personal knowledge that Maciejewski received any note cards from female students alleging sexual harassment. (Def.'s 56.1 ¶ 35.)

4

students. (Def.'s 56.1 ¶ 38.) Plaintiff testified that he never submitted written documentation of these accusations "because I couldn't prove it. It would almost be like hearsay." (Hill Dep., at 103.) Plaintiff acknowledges that he never observed any of the alleged perpetrators sexually harassing any female students, and that parents of the female students who alleged sexual harassment never informed Plaintiff that they had voiced their concerns to Maciejewski. (Def.'s 56.1 ¶¶ 32, 37.)

## IV. Students' In-Class Behavior, Plaintiff's Actions, and Parents' Complaints

During Plaintiff's October 18 seventh grade social studies class, S.P. and T.O. laughed at another student, J.J., who had a "slow speech pattern," while J.J. was talking. (Def.'s 56.1 ¶¶ 40, 42; Hill Dep., at 40, 60.) Plaintiff testified that all of the alleged members of "The Posse" had laughed at J.J. at various times in class prior to October 18. (Hill Dep., at 40, 55-57, 66-67.) At some point during this October 18 class, presumably after the laughing incident, Plaintiff told the alleged Posse members, "If you want to act like gangbangers, we're going to start behaving like gangbusters." (Def.'s 56.1 ¶¶ 81-83; Hill Dep., at 149.)

Approximately 30 or 40 minutes after class had ended, Plaintiff brought S.P. and T.O. to Maciejewski and told her that they had laughed at J.J. and that Plaintiff intended to write them up; Maciejewski said, "Okay," and told Plaintiff to inform two other Edgebrook teachers about the incident. (Pl.'s 56.1 ¶ 53; Hill Dep., at 59-60; 79.) Hill also told Maciejewski (apparently in the presence of S.P. and T.O.) that "these guys were acting like gangbangers. We should keep them apart because when they [a]re together they are trouble." (Hill Dep., at 78-79; Def.'s 56.1 ¶ 80.) In addition, Plaintiff told Maciejewski about the incident in which P.W. and M.M. allegedly chased, caught, hit, and spit on three female students. (Def.'s 56.1 ¶ 43; Pl.'s 56.1 ¶ 11; Hill Dep., at 60.) Maciejewski testified that Plaintiff never used the phrases "sexual harassment" or "disability discrimination" to describe these incidents. (Maciejewski Dep., at 112-13.)

After talking with Maciejewski, Plaintiff submitted a Misconduct Report for S.P. and another

5

for T.O. describing the laughing incident; Maciejewski gave S.P. and T.O. a disciplinary detention. (Def.'s 56.1 ¶¶ 42, 45; Exs. 4, 5 to Hill Dep.) Neither J.J. nor his parents ever complained to Plaintiff or Maciejewski that students had laughed at him, and Plaintiff never spoke to J.J. about being teased. (Def.'s 56.1 ¶¶ 46-49.) On October 19, Maciejewski wrote a memo to Plaintiff stating that P.W.'s mother had complained to Maciejewski earlier that day about Plaintiff's "gangbanger" comment and explaining that Maciejewski had told P.W.'s mother that "the only way to put an end to this was for the boys to know that every teacher, parent and neighbor were watching their behavior." (Def.'s 56.1 ¶¶ 52-54; Ex. 4 to Maciejewski Dep.)

On October 20, while Maciejewski was on vacation, Plaintiff had "a very heated argument" with P.W.'s mother at school in which she stated that the claims regarding her son were "unsubstantiated." (Def.'s 56.1 ¶ 56; Hill Dep., at 145.) Following this argument, Plaintiff asked P.W.'s mother to come to his classroom, where, with the three alleged victims and other school officials present, P.W. himself acknowledged that the female students' version of events was correct. (Hill Dep., at 146.) According to Plaintiff, P.W.'s mother nevertheless "still stood there yelling 'unsubstantiated, unsubstantiated, unsubstantiated.'" (*Id.*) On October 23, K.R.'s father also faxed a letter to Maciejewski expressing his concern about Plaintiff's use of the expression "gangbangers." (Def.'s 56.1 ¶ 57; K.R. father Aff., Ex. G to Def.'s 56.1 ¶ 3; Ex. A to K.R. father Aff.)

Also on October 23, while Maciejewski was still on vacation, as Plaintiff was driving home, he saw T.O., A.F., K.R., and another male student (not an alleged Posse member) walking in the street, rather than on the adjacent sidewalk; Plaintiff "drove up behind them and yelled at them to get out of the street." (Def.'s 56.1 ¶ 84; Hill Dep., at 152-53.) On the evening of October 23, Deborah Williams ("Williams"), the Launch Apprentice Principal,[13] who, with Karen Koegler, the

---

[13] The record does not describe the duties of a Launch Apprentice Principal.

Assigned Assistant Principal,[14] was "in charge" of Edgebrook while Maciejewski was on vacation, called Maciejewski at her home and read to her letters she had received from S.P.'s parents and K.R.'s father complaining about Plaintiff's "gangbangers" remark. (Def.'s 56.1 ¶ 58; Maciejewski Dep., at 61, 67; Exs. 9-11 to Maciejewski Dep.)

On October 24, while Maciejewski was at the Board's regional office to attend a meeting, Eva Nickolich, Region One Superintendent, told Maciejewski that she had received complaints from several parents regarding Plaintiff's "gangbangers" remark and directed Maciejewski to prepare an Incident Report[15] regarding these complaints. (Def.'s 56.1 ¶ 59-60.) Maciejewski recommended to Nickolich that an investigator be assigned to investigate the parents' complaints "to ensure fairness." (Id. ¶ 62.) When Maciejewski returned to Edgebrook on October 24, an unidentified individual gave her the letters from S.P.'s parents and K.R.'s father. (Id. ¶ 63.) Also on October 24, K.R.'s father faxed a letter to Maciejewski claiming that Plaintiff had "followed my son and his classmates after school" the previous day. (Ex. 12 to Maciejewski Dep.) In addition, on October 24, P.W.'s parents sent two letters to Maciejewski, one complaining about Plaintiff's "gangbangers" remark, and the other describing the October 20 "heated argument" between Plaintiff and P.W.'s mother. (Exs. 13-14 to Maciejewski Dep.)

Later on October 24, Maciejewski and Rafael Sanchez ("Sanchez"), Region One Administrator, held conferences with the parents of A.F., T.O., P.W., and K.R., during which Maciejewski and Sanchez informed the parents that Maciejewski would request that Dr. Blondean Davis, Chief Officer of Schools and Regions, initiate a formal investigation of Plaintiff's October 18 "gangbangers" comment and October 23 yelling incident. (Ex. 1 to Michaels Dep., Ex. E to Def.'s 56.1.) Plaintiff claims that Maciejewski told him he "was not to attend" the meeting; (Hill Dep., at

---

[14] The record does not describe the duties of an Assigned Assistant Principal.

[15] The record contains no information regarding Incident Reports.

7

147); Defendant does not address this contention.

## V. Incident Reports and Board Investigation

On October 25, after informing Plaintiff of the parents' complaints, Maciejewski prepared two Incident Reports regarding those complaints.[16] (Def.'s 56.1 ¶¶ 66-67; Maciejewski Dep., at 93-95.) The first, describing "alleged unprofessional, intimidating and libelous behavior on the part of a teacher," stated that the parents of A.F., T.O., S.P., K.R., and P.W. had alleged that Plaintiff had "verbally abus[ed] and verbally intimidat[ed] their . . . sons. . . . [and had] publicly brand[ed] their sons as 'gang bangers.'" (Ex. 3 to Maciejewski Dep.) The second, describing "alleged stalking of students," stated that the parents of K.R., AF, and TO had alleged that Plaintiff "was observed to follow [their children] in his truck after school on 10/23." (Ex. 2 to Maciejewski Dep.)

Maciejewski submitted these Incident Reports to the Director of the Board's Department of Investigations, who assigned Investigator Philip Michaels ("Michaels") to investigate the allegations. (Michaels Dep., at 7-9; Ex. 2 to Michaels Dep.) On an unspecified date, Maciejewski met with Michaels and gave him the letters penned by the parents of SP, K.R., and P.W., as well as a memo drafted by Williams describing Plaintiff's actions on October 20 and 23. (Michaels Dep., at 10-11; Ex. 1 to Michaels Dep.) On November 7 and 8, Michaels interviewed all six alleged Posse members. Michaels then asked Maciejewski for a "random sampling" of other students in the class whom he could interview. (Maciejewski Dep., at 83-84.) Maciejewski gave Michaels the names of three female and three male students whose parents she was able to contact, and Michaels interviewed these students between November 8 and November 16.[17] (Id. at 84; Ex. 2 to Michaels Dep.) In the Incident Report, Michaels wrote that one of the female students told Michaels that

---

[16] These are the only Incident Reports that Maciejewski has prepared in her career as principal. (Pl.'s 56.1 ¶ 46.)

[17] Plaintiff claims that Maciejewski did not give Michaels the names of any of the female students who had accused alleged Posse members of harassing them, but offers no support for this contention. (Pl.'s 56.1 ¶ 44.)

8

Plaintiff intimidated male students "for their own good," one stated that Plaintiff is "a nice teacher and sometimes just pokes fun at the kids," and one felt Plaintiff "was only trying to help the boys." Of the male students, according to the Report, one stated that "the boys in question sometimes tease and make fun of others and [Plaintiff] stands up for those others," another stated that Plaintiff "never referred to the boys as gangbangers until the after-school incident with the girls," and another stated "that the boys have their own gang and that [Plaintiff] will break it up." Michaels testified that, during his investigation, he never saw any handwritten notes from female students and that no one told him the six male students were part of a group called "The Posse." (Michaels Dep., at 18-19, 33.) Plaintiff claims that he "told Maciejewski that they should talk to more tha[n] those that she suggested" (Hill Dep., at 159), but concedes that he never told Michaels that he should interview particular students. Plaintiff acknowledges, further, that he does not know what Michaels did during the course of his investigation, and that Michaels "never heard anything about allegations of sexual harassment" during his investigation. (Def.'s 56.1 ¶¶ 77, 86.)

On November 16, Michaels interviewed Plaintiff regarding the allegations against him. (Def.'s 56.1 ¶ 75.) Plaintiff acknowledges that he never told Michaels that he "was aware of allegations of sexual harassment" during the interview. (Id. ¶ 76.) After Michaels had asked three or four questions, Plaintiff walked out of the interview, explaining only that "I felt it was in my interest to terminate the interview." (Ex. 16 to Hill Dep.; Def.'s 56.1 ¶¶ 79, 91.)

In a November 21 memo to Maciejewski, Plaintiff "formally request[ed] a written copy of [P.W.'s mother's] charges." (Ex. 16 to Hill Dep.) In response, on November 21, Maciejewski wrote to Plaintiff, "As of this date, NO charges have been brought against you by the Chicago Public Schools. . . . If the allegations are determined to be founded, then Dr. Davis will indicate that a hearing be convened." (Ex. 6 to Maciejewski Dep.) The Board did not provide Plaintiff with the opportunity for a hearing because the Board's regulations do not require such a hearing where no charges have been filed.

9

On November 30, Michaels completed his investigation and drafted an Investigative Report in which he recommended that the allegations in the Incident Report be classified as "substantiated." (Def.'s 56.1 ¶ 94; Ex. 2 to Michaels Dep.) Michaels submitted this Report to the Director of Investigations, who forwarded it to Dr. Davis. (Michaels Dep., at 16.) In or about December 2000, an unnamed individual in the Office of Schools and Regions forwarded the Investigative Report to James Ciesil ("Ciesil"), the Senior Assistant General Counsel to the Board responsible for the Law Department's Discipline Unit. (Def.'s 56.1 ¶ 94; Ciesil Aff., Ex. F to Def.'s 56.1 ¶¶ 2, 4.)

## VI.    Warning Resolution

On an unspecified date, Ciesil, who did not know that Plaintiff had made allegations of sexual harassment or disability discrimination, recommended to Marilyn Johnson ("Johnson"), then-General Counsel to the Board, that Plaintiff receive a Warning Resolution (the "Resolution") pursuant to § 34-85 of the Illinois School Code; Johnson agreed and directed Ciesil to draft such a Resolution.[18] (Def.'s 56.1 ¶¶ 96, 98, 99, 101; Ciesil Aff. ¶¶ 8, 10, 14, 16.) According to Ciesil, the Board's "rules and regulations[19] allow [it] to adopt Warning Resolutions against tenured teachers without the need for a hearing or other due process." (Def.'s 56.1 ¶ 100; Ciesil Aff. ¶ 15.)

Johnson signed the Resolution and submitted it to Paul Vallas ("Vallas"), then-Chief Executive Officer of the Board. (Ciesil Aff. ¶ 11.) Vallas signed the Resolution and submitted it to the Board, which adopted the Resolution at its January 24, 2001 meeting.[20] (Def.'s 56.1 ¶ 102;

---

[18]    Section 34-85 provides, "Before service of notice of charges on account of causes that may be deemed to be remediable, [a tenured] teacher . . . shall be given reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges." 105 ILCS 5/34-85.

[19]    These "rules and regulations" are not in the record.

[20]    During the period July 1, 1995 to July 31, 2003, according to Ciesil, the Board adopted approximately 480 Warning Resolutions, or about five per monthly meeting. (Ciesil Aff. (continued...)

10

Ciesil Aff. ¶ 12.) The Resolution stated that Plaintiff had "engaged in unsatisfactory conduct" and warned Plaintiff

> to correct the following deficiencies . . . you have referred to a group of male students as "gangbangers" and used other derogatory terms in referencing these students in front of your class and in other public settings. . . . you have followed this same group of male students after school hours in your vehicle as a form of intimidation. . . . [and] you have used other forms of intimidation toward this same group of male students by making statements and comments in an effort to intimidate and/or humiliate them.[21]

(Ex. 19 to Hill Dep.) The Resolution concluded, "Dismissal will be requested if you fail to comply with directives for improvement as noted above." (Id.)

On January 16, 2001, Ciesil informed Plaintiff that he would receive the Warning Resolution, which Plaintiff did receive on January 25. (Def.'s 56.1 ¶¶ 103-04.) Plaintiff does not recall telling anyone that he felt the issuance of the Resolution was in retaliation for his engaging in a protected activity. (Id. ¶ 106.) It is undisputed that neither Michaels nor Maciejewski was involved in the decision to discipline Plaintiff. (Id. ¶¶ 90, 109.)

In a February 13, 2001 letter to Vallas, Plaintiff stated, "I completely and categorically deny the conduct listed in the Warning Resolution. These alleged deficiencies are fabrications of my conduct and are neither accurate nor true. The deficiencies listed in this warning resolution are totally scurrilous to my reputation after 40 years with the Chicago Board of Education." (Ex. 20 to Hill Dep.)

On or about May 2, 2001, Plaintiff filed a Charge of Discrimination and Retaliation with the Illinois Department of Human Rights ("IDHR") and the U.S. Equal Employment Opportunity Commission ("EEOC"). (Def.'s 56.1 ¶¶ 9-10; Ex. B to Def.'s 56.1.) On March 4, 2002, the U.S.

---

[20](...continued)
¶ 13.)

[21] The record does not indicate what "other forms of intimidation" Plaintiff allegedly engaged in.

11

Department of Justice issued Plaintiff a Notice of Right to Sue. (Def.'s 56.1 ¶ 10; Ex. A to Compl.)

## VII. Complaint

Plaintiff claims that, "based on . . . his training, [he] believed, in good faith, that the . . . harassment by 'The Posse' was sufficiently severe and recurring to establish a hostile school environment on the basis of gender in violation of the Civil Rights Act of 1964 and the Illinois Human Rights Act."[22] (Compl. ¶ 15.) Plaintiff also contends that, "based upon . . . his training . . . [he] believed, in good faith, that . . . [the students' laughing at the student who spoke slowly] may be severe enough to establish a hostile school environment for the victim and possibly . . . violate the Americans with Disabilities Act[23] . . . and the Illinois Human Rights Act."[24] (Compl. ¶ 15.)

Plaintiff claims that Defendant retaliated against him in violation of Title VII by undertaking a "phony . . . egregious, unprofessional, perfunctory, non-objective[,] discriminatory . . . biased and prejudiced" investigation based on "false and malicious" allegations made by the alleged Posse members and their parents. (Compl. ¶ 20(A)-(C).) Plaintiff urges that the Board undertook this investigation "in order to discredit [him] and adversely to affect his professional reputation." (Id. ¶ 20(C).) According to Plaintiff, "[t]he investigators refused . . . to interview any of the students who had been the victims of the harassment, but instead focused on those who were solicited to provide derogatory information about the Plaintiff" and "refused to interview witnesses to the harassment and witnesses favorable to the Plaintiff during the pretextual and phony investigation, though the witnesses were specifically identified by the Plaintiff." (Id. ¶ 20(D)-(E).) Plaintiff claims that he "was never told of any of the charges against him, was never informed of the allegations made against him, and was never given any due process hearing" despite the fact that Maciejewski told Plaintiff

---

[22] Pub. Act No. 81-1216, 1979; 775 ILCS 5/1-101–5/10-101 (2003).

[23] 42 U.S.C. § 12101 et seq.

[24] Plaintiff does not claim that Defendant's treatment of him violated either the Americans with Disabilities Act or the Illinois Human Rights Act.

that, if the allegations were determined to be founded, then Dr. Davis would ensure that a hearing was convened. (*Id.* ¶ 20(F).) "As a result of this phony investigation," Plaintiff contends, the Board "brought spurious and pretextual charges against him." (*Id.* ¶ 20(G)-(I).) The Warning Resolution, Plaintiff urges, contained "false" allegations that were "based solely upon the flawed and phony investigation." (*Id.* ¶ 20(I).) Plaintiff thus claims that Defendant retaliated against him after he "had lawfully protested discrimination and sexual harassment, had lawfully assisted and counseled victims of sexual and handicap discrimination, and had engaged in protected activity in a manner recognized by Title VII." (*Id.* ¶ 21.)

## DISCUSSION

Summary judgment is appropriate when, construing the facts in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1024 (7th Cir. 2003) (citation omitted). Thus, the court may grant summary judgment only "if, on the record as a whole, a rational trier of fact could not find for the non-moving party." *Venturelli v. ARC Cmty. Servs., Inc.*, 350 F.3d 592, 598 (7th Cir. 2003) (citation omitted).

Plaintiff essentially claims that Defendant violated Title VII by retaliating against him for opposing peer student sexual and disability harassment.[25] Title VII prohibits an employer from

---

[25] Significantly, Plaintiff's complaint does not assert claims under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681, *et seq.*, or under the Americans with Disabilities Act. The Supreme Court has held that a defendant school board "may be liable for [its] deliberate indifference to known acts of peer sexual harassment" pursuant to Title IX, *see Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 648 (1999), and lower courts have found that peer student disability harassment is actionable under the Americans with Disabilities Act and the Rehabilitation Act of 1973, *see, e.g., M.P. ex rel. K. v. Indep. Sch. Dist. No. 721*, 326 F.3d 975, 981-82 (8th Cir. 2003); *Biggs v. Bd. of Educ. of Cecil County*, 229 F. Supp. 2d 437, 444-45 (D. Md. 2002).

(continued...)

discriminating against an employee "because he has opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e-3(a); *Hamm v. Weyauwega Milk Prods., Inc.*, 332 F.3d 1058, 1066 (7th Cir. 2003). "In other words, Title VII protects an employee from retaliation for complaining about the types of discrimination it prohibits." *Hamm*, 332 F.3d at 1066 (internal quotation marks and citation omitted).

This court therefore begins by analyzing whether Plaintiff's activity was protected under Title VII. Defendant claims that Plaintiff cannot make out a claim under Title VII because the behavior he complained about–peer student sexual and disability harassment–is not actionable under Title VII.[26] (Def.'s Mem.,[27] at 3-6.) Plaintiff urges that his retaliation claim is in fact cognizable under Title VII. (Pl.'s Mem.,[28] at 6.) Unfortunately, neither party cites any relevant authority.

Our Court of Appeals has stated that, to prevail on a Title VII retaliation claim, a plaintiff need only demonstrate that he "reasonably believed in good faith that the practice []he opposed

---

[25](...continued)
Plaintiff has not argued that the warning he received violates Title IX, but the court notes that at least some case law entertains such a theory. *Compare Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 249 (5th Cir. 1997) ("[T]itle IX affords a private right of action for retaliation against the employees of federally funded educational institutions") *with Jackson v. Birmingham Bd. of Educ.*, 309 F.3d 1333, 1347 (11th Cir. 2002) ("Title IX does *not* imply a private right of action in favor of individuals who, although not themselves the victims of gender discrimination, suffer retaliation because they have complained about gender discrimination suffered by others") (emphasis original). Further, Plaintiff arguably may have had a cognizable retaliation claim under the Americans with Disabilities Act for his complaints about peer disability harassment. *See Garber v. Embry-Riddle Aeronautical Univ.*, 259 F. Supp. 2d 979, 983 (D. Ariz. 2003). As Plaintiff has not brought claims under either statute, however, any such claims are waived.

[26] Although neither party has addressed the matter, the court notes its own uncertainty that Plaintiff has suffered an adverse employment action sufficient to sustain a Title VII retaliation claim. *See, e.g., Grube v. Lau Indus., Inc.*, 257 F.3d 723, 729 (7th Cir. 2001) ("[U]nfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions").

[27] Defendant's Memorandum in Support of Its Motion for Summary Judgment.

[28] Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment.

14

violated Title VII," *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002) (citation omitted), but "[t]he complaint must involve discrimination that is prohibited by Title VII." *Hamner v. St. Vincent Hosp. and Health Care Ctr., Inc.*, 224 F.3d 701, 707 (7th Cir. 2000). In *Hamner*, the plaintiff alleged that his former employer terminated him in retaliation for submitting a grievance alleging same-sex sexual harassment. *Id.* at 703. In affirming judgment as a matter of law for the defendant, the court noted that the plaintiff's claim was based solely on his homosexuality, rather than his sex, and that such harassment was not prohibited by Title VII. *Id.* at 705. The court stated that, "[i]f a plaintiff opposed conduct that was not proscribed by Title VII, no matter how frequent or severe, then his sincere belief that he opposed an unlawful practice cannot be reasonable." *Id.* at 707 (citing *Wimmer v. Suffolk County Police Dept.*, 176 F.3d 125, 135 (2d Cir.1999) (stating that opposition to discrimination by co-employees against non-employees is not cognizable under Title VII, as the statute only prohibits discrimination by employers, not co-employees, and thus plaintiff's opposition was not directed at an unlawful employment practice)). The court found, further, that although Plaintiff believed there was no difference between his sex and his sexual orientation, such belief was not "objectively reasonable," as Title VII only prohibits employers from harassing employees because of their sex. *Id.* The court concluded, therefore, that "no reasonable jury could find that [the plaintiff] reasonably believed that his grievance was directed at an unlawful employment practice under Title VII." *Id.*

As with discrimination based on sexual orientation, sexual or disability harassment by one student against another is not an unlawful employment practice under Title VII. Although our own Court of Appeals has not addressed the issue, several other courts have concluded that Title VII does not prohibit retaliation for opposing such peer student harassment. In *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178 (8th Cir. 1998), the plaintiff, a supplemental marching band instructor, alleged he was fired in retaliation for complaining to the school's principal and three assistant superintendents about the principal's perceived disparate treatment of a black

15

and a white student. *Id.* at 1183. The court stated that "opposing an employer's actions outside the ambit of an employment practice is unprotected by Title VII." *Id.* (citing *Evans v. Kansas City, Mo. Sch. Dist.*, 65 F.3d 98, 101 (8th Cir.1995), *cert. denied*, 517 U.S. 1104 (1996) (finding no Title VII violation where employee complained about the school principal's actions in complying with a desegregation order; such a complaint is not based on an employment practice)). Plaintiff's claim that he was retaliated against for opposing discrimination toward students, the court concluded, was not cognizable under Title VII. *Id.*

In *Lamb-Bowman v. Delaware State Univ.*, 152 F. Supp. 2d 553 (D. Del. 2001), *aff'd*, No. 01-2045, 2002 WL 1404762 (3d Cir. Jun. 28, 2002), the plaintiff, who was employed as the defendant university's head women's basketball coach, complained to the university's athletic director about disparities between the women's and men's athletic programs over a period of seven years. *Id.* at 554. After the university informed plaintiff that she would not be reappointed, she brought claims for sex discrimination and retaliation under Title VII. *Id.* at 557. In granting summary judgment for the defendant, the court found that, as the plaintiff had alleged retaliation by the defendants "because she complained of disparities between the women's and men's athletic programs, a potential violation of Title IX," she "did not oppose a discriminatory action that is proscribed by" Title VII, and thus had has failed to state a claim of retaliation under Title VII. *Id.* at 561. The court also rejected plaintiff's argument that her claim should be upheld because she had protested what she believed to be a discriminatory practice. *Id.* at 561 n.17 (citing *Nelson v. Upsala College,* 51 F.3d 383, 388 (3d Cir.1995) ("The words 'employment practice' [in the statute] suggest that the retaliatory conduct must relate to an employment relationship"). The court noted that the plaintiff had not alleged that any students were discharged from employment, not chosen for employment, or otherwise denied any privilege of employment by the defendant. *Id.* As "[a]dvocacy of students' rights is simply not prohibited by Title VII," the court found, the plaintiff could not have held a "reasonable belief" that she protested an unlawful employment practice. *Id.*

16

In *Holt v. Lewis*, 955 F. Supp. 1385 (N.D. Ala. 1995), aff'd, 109 F.3d 771 (11th Cir. 1997), a student had informed the plaintiff, a university professor, that she was being discriminated against based on her gender. *Id.* at 1386. The plaintiff directed the student to contact the appropriate university officials, and the plaintiff himself notified those officials. *Id.* After one university administrator told the plaintiff to keep the matter private, the plaintiff informed a trustee by telephone of the situation. *Id.* The university informed the plaintiff that it would not renew his contract because he had contacted the trustee, and the plaintiff resigned. *Id.* In dismissing the plaintiff's Title VII retaliation claim, the court found that, as the plaintiff had not alleged that the female student had been discharged from employment, not chosen for employment, or denied any privilege of employment by the university, any retaliation the plaintiff suffered for advocating that student's rights was not prohibited by Title VII. *Id.* at 1387-88 (citing *Bigge v. Albertsons, Inc.*, 894 F.2d 1497, 1501 (11th Cir.1990) (stating that a plaintiff must "show that he opposed an unlawful employment practice which he reasonably believed had occurred" to state a cognizable claim under 42 U.S.C. § 2000e-3(a)).

Regardless how well-meaning Plaintiff's conduct in opposing the male students' behavior was, this court concludes that Title VII does not prohibit peer student disability or sexual harassment, and any belief to the contrary, however sincerely held, is not objectively reasonable. A retaliation claim based on opposition to student harassment of other students, therefore, is not cognizable under Title VII, and Defendant's motion for summary judgment must be granted.

## CONCLUSION

Based on the undisputed facts of this case, Plaintiff Allan Hill cannot establish a claim of retaliation under Title VII. Therefore, for the reasons stated above, Defendant Board's Motion for summary judgment (Doc. No. 15-1) is granted.

ENTER:

Dated: March 29, 2004

REBECCA R. PALLMEYER
United States District Judge